UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TERRY BUFORD, ERCELLE SIMMONS, GEORGE WOLFF, YVONNE SCOTT, and ERICA TRIPLETT, individually and on behalf of the classes defined herein,<br><br>Plaintiffs,<br><br>v.<br><br>PALISADES COLLECTION, LLC, BOWMAN HEINTZ BOSCIA & VICIAN, GERALD E. BOWMAN, GEORGE W. HEINTZ, JAMES D. BOSCIA, GLENN S. VICIAN, THOMAS A. BURRIS, PAUL H. ELLISON, PHILLIP A. LAMERE, and BLATT, HASENMILLER, LEIBSKER & MOORE, LLC,<br><br>Defendants. | Case No. 07 C 4974<br><br>Judge Ruben Castillo |

## MEMORANDUM OPINION AND ORDER

This suit was brought by Terry Buford ("Buford"), Ercelle Simmons ("Simmons"), George Wolff ("Wolff"), Yvonne Scott ("Scott"), and Erica Triplett ("Triplett") (collectively, "Plaintiffs"), individually and on behalf of four defined classes, to redress allegedly unlawful credit and collections practices by Defendants Palisades Collection, LLC ("Palisades"); the law firm of Bowman Heintz Boscia & Vician ("Bowman law firm"); Gerald E. Bowman, George W. Heintz, James D. Boscia, Glenn S. Vician, Thomas A. Burris, Paul H. Ellison, Phillip A. Lamere ("Bowman Partners"); and the law firm of Blatt, Hasenmiller, Leibsker & Moore, LLC ("BHLM"). The Amended Complaint contains: (1) a class claim for violation of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, alleging that Defendants filed time-barred lawsuits against them in violation of the FDCPA; and (2) a claim for declaratory and

injunctive relief, requesting this Court enter a declaratory judgment against Palisades stating that Palisades filed time-barred lawsuits for telecommunications debts against the proposed plaintiff class, and an injunction prohibiting Palisades from continuing this practice.[1] (R. 33, Am. Compl.) Currently before the Court is the joint motion by Defendants Palisades, the Bowman law firm, and the Bowman Partners (collectively, "Defendants") to dismiss Plaintiffs' class claim—Count I—under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).[2] (R. 54, Mot. to Dismiss.) For the following reasons, the motion is denied.

## RELEVANT FACTS[3]

During the period from July 2006 to January 2007, Palisades, a collections agency, represented by the Bowman law firm, filed separate lawsuits against Buford, Simmons, Scott, and Triplett in the Circuit Court of Cook County to collect alleged cellular phone service debts these Plaintiffs had individually incurred with AT&T Wireless Services, the predecessor to AT&T Mobility ("AT&T"). (R. 33, Am. Compl ¶¶ 26, 31, 49, 55; R. 54, Mot. to Dismiss, Ex. 3, Younger Aff.)[4] Palisades had previously purchased all of AT&T's rights, title, and interest in the

---

[1] On March 27, 2008, Plaintiff Wolff stipulated to the dismissal of Count II, which was an individual claim by Plaintiff Wolff alleging that Palisades and BHLM violated his rights under the FDCPA. (R. 73, Stip. of Dismissal.)

[2] BHLM did not join in this motion.

[3] These facts are derived from Plaintiffs' Amended Complaint, as on a motion to dismiss, the Court assumes all well-pleaded allegations in the complaint to be true and draws all reasonable inferences in the plaintiff's favor. Fed. R. Civ. P. 12(b)(6); *Christensen v. County of Boone, Illinois*, 483 F.3d 454, 457 (7th Cir. 2007).

[4] A party that files a motion to dismiss for lack of subject matter jurisdiction may use affidavits and other material to support the motion to dismiss. *United Phosphorus, Ltd. v. Angus Chem. Co.*, 322 F.3d 942, 946 (7th Cir. 2003). Defendants attached this affidavit from Deborah Younger, Area Manager of AT&T Mobility, to their motion to dismiss.

AT&T accounts of Wolff, Triplett, Simmons, Scott, and Buford between May 2001 and May 2003. (R. 54, Mot. to Dismiss, Ex. 3, Younger Aff.; *id.*, Ex. 4, Ashman Aff.)[5] Plaintiffs allege that the debts for which recovery was sought in each case were over two years old, and thus were not collectible. (R. 33, Am. Compl ¶¶ 29, 34, 54, 61.)

The Bowman law firm filed lawsuits on behalf of Palisades to collect alleged cellular telecommunications debts that Simmons, Scott, Triplett, and Buford had incurred with AT&T. The Bowman law firm obtained a default judgment against Simmons for $1,541; against Scott for $2,357.08; against Triplett for $1,474.79; and against Buford for $1,142. (*Id.* ¶¶ 26, 31, 49, 55, 57.) On their motions, the state court vacated the judgments against Scott and Triplett in October 2007. (*Id.* ¶¶ 51, 57.) The state court judgments against Buford and Simmons remain in effect. BHLM filed a lawsuit on behalf of Palisades against Wolff to collect alleged cellular telecommunications debts that Wolff had incurred with AT&T. (*Id.* ¶ 35.) The state court entered a default judgment against Wolff in the amount of $1129.33; on Wolff's motion, the judgment was vacated and dismissed with prejudice in October 2007. (*Id.* ¶ 44.)

Based on their experience with Palisades through their individual cases, Plaintiffs allege that Palisades, the Bowman law firm, and BHLM are in the practice of purchasing time-barred consumer debts, such as their cellular phone service debts, and illegally enforcing those debts against consumers. (*Id.* ¶¶ 3, 65, 67). Moreover, Plaintiffs allege that most or all of the lawsuits Palisades brought through the Bowman law firm, the Bowman Partners, and BHLM, were filed more than two years from the date when the debt accrued in violation of 47 U.S.C. § 415, which

---

[5] Defendants attached this affidavit from the supervisor of the legal department of Palisades, Rosemarie Ashman, to their motion to dismiss.

3

states that the statute of limitations applicable to cellular telecommunications debts is two years from the date of when the debt accrues. (*Id.* ¶¶ 62-63, 70.)

Plaintiffs allege that Palisades filed more than 500 lawsuits to collect telecommunications debts during the year preceding the filing of this action. (*Id.* ¶ 66.) Further, Plaintiffs allege that Palisades, the Bowman law firm, and BHLM "engage in a pattern and practice of filing and threatening suit on time-barred debts of modest amounts, knowing that the person could not retain counsel to defend such suits except by paying an amount comparable to that sought in the lawsuits." (*Id.* ¶ 72.) Plaintiffs assert that Defendants' practice of filing collections actions in this manner violates the FDCPA. (*Id.* ¶ 3.)

## ANALYSIS

In their motion to dismiss, Defendants argue that this Court lacks subject matter jurisdiction over Buford's and Simmons' individual claims under the *Rooker-Feldman* doctrine. (R. 55, Mem. in Supp. of Defs.' Mot. to Dismiss at 7-11.) Defendants also argue that even if this Court has jurisdiction, Plaintiffs have not sufficiently alleged a violation of the FDCPA because their claims are barred by claim preclusion. (*Id.* at 11-14.) Finally, Defendants argue that Plaintiffs' class claims are barred by the applicable "Terms & Conditions" Agreements governing Plaintiffs' individual cellular telecommunications accounts, which purport to waive Plaintiffs' right to pursue class actions. (*Id.* at 14-15.)

### I. Legal Standards

In ruling on a motion to dismiss under Rule 12(b)(1) or 12(b)(6), the Court accepts all well-pleaded facts in the complaint as true, and draws all reasonable inferences from those facts in the plaintiff's favor. Fed. R. Civ. P. 12(b)(1); Fed. R. Civ. P. 12(b)(6); *McMillan v. Coll'n*

*Prof'ls, Inc.*, 445 F.3d 754, 758 (7th Cir. 2006). To survive a Rule 12(b)(6) motion to dismiss, the complaint must communicate to the defendant the specific claim and the grounds on which the claim rests. *Bell Atlantic Corp. v. Twombly*, — U.S. —, 127 S. Ct. 1955, 1964 (2007); *Airborne Beepers & Video, Inc. v. AT&T Mobility LLC*, 499 F.3d 663, 667 (7th Cir. 2007). This means that the plaintiff must plead "enough facts to state a claim for relief that is plausible on its face," and more than merely a "suspicion" of a legally cognizable claim. *Twombly*, 127 S. Ct. at 1964-65, 1974.

The party asserting jurisdiction bears the burden of proof on a Rule 12(b)(1) motion. *United Phosphorus, Ltd. v. Angus Chem. Co.*, 322 F.3d 942, 946 (7th Cir. 2003). To decide whether that party has met its burden, the Court can weigh the facts alleged in the pleadings to determine if that party has established jurisdiction. *Id.* Further, the Court may consider affidavits and other materials in deciding a Rule 12(b)(1) motion. *Id.*

## ANALYSIS

### I. Motion to Dismiss for Lack of Subject Matter Jurisdiction

Defendants argue that Buford's and Simmons' claims are barred by the *Rooker-Feldman* doctrine because their FDCPA claim is based on the default judgments entered against them in state court, and Plaintiffs could have argued their FDCPA claims in state court.[6] (R. 55, Mem. in Supp. of Mot. to Dismiss at 10.) *Rooker-Feldman* prevents federal courts from reviewing of

---

[6] The Amended Complaint does not state any individual claims on behalf of Buford or Simmons, and Defendants do not argue that a dismissal of Buford's and Simmons' claims would lead to the dismissal of any of the class claims. Nevertheless, the Court addresses the issue of subject matter jurisdiction because Defendants' jurisdictional arguments may apply to future class members, and "no court may decide a case without subject matter jurisdiction, and neither the parties nor their lawyers may stipulate to jurisdiction or waive arguments that the court lacks jurisdiction." *Wisconsin v. Ho-Chunk Nation*, 463 F.3d 655, 661 (7th Cir. 2006).

state court decisions, barring federal claims both in cases where the plaintiff is asking for federal review and rejection of a state court judgment, as well as where the federal claim is "inextricably intertwined" with the state court decision. *Beth-El All Nations Church v. City of Chicago*, 486 F.3d 286, 292 (7th Cir. 2007). The *Rooker-Feldman* doctrine applies to "cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005).

The Seventh Circuit has phrased the fundamental issue in assessing the applicability of the *Rooker-Feldman* doctrine, as "whether the federal plaintiff seeks to set aside a state court judgment or whether he is, in fact, presenting an independent claim" or "whether the injury alleged by the federal plaintiff resulted from the state court judgment itself or is distinct from that judgment." *Long v. Shorebank Dev. Corp.*, 182 F.3d 548, 555 (7th Cir. 1999). This amounts to "a distinction between a federal claim alleging a prior injury caused by a state court judgment and a federal claim alleging a prior injury that a state court failed to remedy." *Id.* Plaintiffs argue that their FDCPA claims fall into the latter category. Defendants, on the other hand, contend that Plaintiffs are, in essence, asking this Court to review the default judgments entered against them in the Circuit Court of Cook County. (R. 55, Mem. in Supp. of Defs.' Mot. to Dismiss at 7.)

The Seventh Circuit's opinion in *Long* is analogous to the instant case. In *Long*, the Seventh Circuit held that *Rooker-Feldman* did not bar an FDCPA claim because the FDCPA injuries were "independent of and complete" before the entry of a state court eviction order. *Long*, 182 F.3d at 556. In that case, the state court entered an order evicting the plaintiff her

6

from her federally-subsidized apartment. *Id.* at 553. The plaintiff then sued her management company, landlord, and the landlord's attorney for her unlawful eviction, alleging, *inter alia*, violations of the FDCPA. *Id.* In finding that the plaintiff's FDCPA claims were distinct from the state court eviction order, the Seventh Court emphasized that the FDCPA provides independent rights for the plaintiff. *Id.* at 556. In addition, because the defendants committed the alleged FDCPA violations before the state court entered the eviction order, the plaintiff's FDCPA claims were outside the scope of the *Rooker-Feldman* doctrine. *Id.*; *see also Sides v. City of Champaign*, 496 F.3d 820, 825 (7th Cir. 2007) (finding that legal challenges to events that precede a state court judgment are not barred by *Rooker-Feldman*).

Similarly, Plaintiffs' FDCPA claims are also "independent of and complete" from their state court judgments. Defendants' alleged FDCPA violations occurred when they filed the state court actions against Buford and Simmons in September 2006 and January 2007 respectively, past the statutorily allowed two-year period. (R. 33, Am. Compl, ¶¶ 26, 31.) Defendants' alleged FDCPA violations—filing and prosecution time-barred debt collection suits—was necessarily accomplished before the entry of the judgments months later in February 2007. (*Id.* ¶¶ 26, 31.) Thus, the Defendant's alleged FDCPA violations are not barred by *Rooker-Feldman* because they preceded the state court judgments against Plaintiffs. Moreover, Plaintiffs' federal claims are distinct from the state court cases, because unlike in the state court, the issue here is not whether Plaintiffs were in debt to AT&T on their cellular telecommunications accounts. (R. 33, Am. Compl, ¶¶ 26, 31.) Rather, Plaintiffs are asking the Court to examine Defendants' alleged illegal practice of filing time-barred lawsuits in violation of the FDCPA. (R. 33, Am. Compl, ¶ 3.) Thus, Plaintiffs are not simply asking this Court to review the default judgments

against them, but are alleging separate injuries under the FDCPA. The fact that Plaintiffs' pursuit of the FDCPA claims could ultimately show that the state court judgments were erroneous does not render *Rooker-Feldman* applicable. *Long*, 182 F.3d at 555-56. Plaintiffs may deny the correctness of the state court judgments in pursuing the FDCPA claims without changing their claim into an improper request for direct review of the state court judgment.[7] *Id.*

Therefore, this Court has subject matter jurisdiction to hear Plaintiffs' FDCPA claims.

## II.     Rule 12(b)(6) Motion to Dismiss

Defendants next contend that even if this Court has subject matter jurisdiction, Plaintiffs' individual claims are barred by claim preclusion. In the alternative, Defendants argue that the "Terms and Agreements" in the AT&T Wireless Welcome Guides ("Welcome Guides") waive Plaintiffs' right to pursue a class action.

### A.     Claim Preclusion

Courts must apply the preclusion law of the state in which the court that rendered the earlier judgments sits. *Hicks v. Midwest Transit, Inc.*, 479 F.3d 468, 471 (7th Cir. 2007). Since the Circuit Court of Cook County rendered the default judgments in the instant case, Illinois preclusion law applies. Under the Illinois doctrine of claim preclusion, or *res judicata*, a final judgment on the merits precludes parties or their privies not only from relitigating issues that were actually raised in the prior proceedings, but also from presenting issues that could have been raised in the prior action but were not. *Id.* (citing *River Park Inc. v. City of Highland Park*,

---

[7] Within their *Rooker-Feldman* argument, Defendants also contend that because the state court had concurrent jurisdiction to hear Plaintiffs' FDCPA claims, their failure to raise the FDCPA in state court precludes this Court from hearing these claims. (R. 55, Mem. in Supp. of Defs.' Mot. to Dismiss at 10.) This a *res judicata*, not *Rooker-Feldman* argument, which the Court discusses below.

8

703 N.E.2d 883, 889 (Ill. 1998)). For *res judicata* to preclude a claim under Illinois law, there must be: (1) a final judgment on the merits rendered by a court of competent jurisdiction; (2) an identity of causes of action; and (3) an identity of parties or their privies. *Id.* The burden of establishing preclusion is placed on the party claiming it. *ITOFCA, Inc. v. MegaTrans Logistics, Inc.*, 322 F.3d 928, 933 (7th Cir. 2003) (internal citations omitted). Any doubts are resolved against preclusion. *Id.*

Plaintiffs could have raised their FDCPA arguments as a counterclaim in the state court debt collection suits. *See* 15 U.S.C. § 1692k(d) (vesting jurisdiction in district courts and "in any other court of competent jurisdiction"); *see also PRA III, LLC v. Hund*, 846 N.E.2d 965, 967 (Ill. App. Ct. 2006) (defendant properly filed counterclaim in state court for violation of FDCPA in response to plaintiff's suit to recover on a debt). Although counterclaims are generally permissive rather than mandatory in Illinois, *res judicata* bars bringing the counterclaim in a separate action "if successful prosecution of that action would in effect nullify the judgment entered in the prior litigation." *Fuller Family Holdings, LLC v. Northern Trust Co.*, 863 N.E.2d 743, 755-756 (Ill. App. Ct. 2007) (citing 735 ILCS 5/2-608(a)).

In *Fuller Family Holdings*, the Illinois Appellate Court stated that the question of whether *res judicata* bars bringing a permissive counterclaim in a separate action essentially collapses into the question of whether the second requirements of *res judicata* is met: "if the defendant's [state law] claim involves the same operative facts as the plaintiff's [federal] claim." *Fuller Family Holdings*, 863 N.E.2d at 755-756. Accordingly, the Court will proceed to analyze whether the three requirements of *res judicata* are met, and then will circle back to determine if successful prosecution of the FDCPA action would have in effect nullified the debt collection

judgments in state court.

The parties do not dispute that the state and federal suits involve an identity of parties. In addition, a default judgment is considered a final judgment on the merits for *res judicata* purposes. *Schlangen v. Resolution Trust Corp.*, 934 F.2d 143, 146 (7th Cir. 1991) (citing *Housing Auth. v. YMCA*, 461 N.E.2d 959 (Ill. 1984)).[8] The more difficult question is the second requirement for *res judicata*, whether there is an identity of causes of action between the state and federal cases. Defendants argue that the state court debt collection and federal FDCPA claims "arise out of a single group of operative facts," and thus amount to an identity of causes of action. (R. 55, Mem. in Supp. of Defs.' Mot. to Dismiss at 12.) Further, Defendants contend that because Plaintiffs could have raised the FDCPA cause of action in the state court proceedings, they are precluded from doing so now. (*Id.* at 13.) Plaintiffs, by contrast, maintain that the transactions at the heart of the state and federal suits are different for purposes of *res judicata*. (R. 65, Pls.' Resp. to Defs.' Mot. to Dismiss at 12.)

In deciding whether there is an identity of causes of action, Illinois courts apply the "transactional" test, which analyzes whether both claims arise out of the same factual situation. *In re Dollie's Playhouse, Inc.*, 481 F.3d 998, 1001 (7th Cir. 2007). "[S]eparate claims will be considered the same cause of action for purposes of *res judicata* if they arise from a single group of operative facts, regardless of whether they assert different theories of relief." *River Park, Inc. v. City of Highland Park*, 703 N.E.2d 883, 893 (1998). "[T]he transactional test permits claims

---

[8] Plaintiffs' citations to cases discussing collateral estoppel are inapposite. (R. 65, Pls.' Resp. to Defs.' Mot. to Dismiss at 11-12.) Unlike *res judicata*, the application of collateral estoppel requires an issue to have been actually litigated and determined in the prior suit. *See Nowak v. St. Rita High Sch.*, 757 N.E.2d 471, 477-78 (Ill. 2001). The doctrine of *res judicata* has no such requirement.

to be considered part of the same cause of action even if there is not a substantial overlap of evidence, so long as they arise from the same transaction." *Id.*

Plaintiffs argue that this Court should rely on *Whitaker v. Ameritech Corp.*, 129 F.3d 952, 958 (7th Cir. 1997), in which the the Seventh Circuit held that the plaintiff's claim that Ameritech violated the FDCPA through its billing and collection activities was not the same transaction as the underlying state court suit to collect on the plaintiff's debt. In *Whitaker*, the telephone service provider obtained a default judgment against the plaintiff in Illinois state court for the balance due on the plaintiff's phone bill. 129 F.3d 952, 955 (7th Cir. 1997). The plaintiff did not appeal the judgment, but rather sued Ameritech in federal court asserting, *inter alia*, that Ameritech violated the FDCPA though its billing and collection activities. *Id.* at 958. While acknowledging that the plaintiff's claims arose out of her telephone service "in the most general sense," the Court held that the state court suit to collect on plaintiff's debt was a different cause of action from the plaintiff's claim that she was injured in the "collection process." *Id.* The *Whitaker* plaintiff incurred a debt to the service provider "every time she picked up the telephone" to make a call; however, Ameritech's collection procedures did not affect the plaintiff until she failed to pay her bill. *Id.* Accordingly, the Seventh Circuit held that *res judicata* did not apply. *Id.*

Similarly, while Plaintiffs' claims arise out of their cellular telephone use, the heart of their federal claims is that Defendants injured them in the debt collection process. As in *Whitaker*, Plaintiffs incurred a debt to AT&T, and by extension, Palisades (the party to whom it assigned its rights to the debt) when they failed to timely pay their bill; however, Defendants' collection procedures did not affect Plaintiffs until they failed to pay their bills. *Id.* Defendants

11

sued Plaintiffs in state court for their failure to timely pay their individual cell phone bills, while their FDCPA claims allege that Defendants "systematically engaged in filing and threatening lawsuits on time-barred debts" against numerous plaintiff customers. (R. 33, Am. Compl. ¶ 3.) While unlike in *Whitaker*, Defendants' alleged FDCPA violation here did not occur until the filing of the lawsuit to collect on Plaintiffs' debts, the Seventh Circuit's reasoning in *Whitaker* is on point. The injury of which Plaintiffs complain is the type that the FDCPA was designed to remedy: protecting consumers from the unscrupulous antics of debt collectors, irrespective of whether a valid debt actually exists. *Adair v. Sherman*, 230 F.3d 890, 895-96 (7th Cir. 2000) (citing *Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. 1998)). Accordingly, the sets of facts underlying the state and federal cases do not comprise the same cause of action, and Plaintiffs' claims are not barred by claim preclusion.

It follows that successful prosecution of the FDCPA action would not nullify the judgment entered in the state court litigation. *Fuller Family Holdings*, 863 N.E.2d at 755-756. Count I of the Amended Complaint, the FDCPA claim, does not seek to have the state court judgments vacated. Rather, it seeks statutory and actual damages for the class for Defendants' alleged violation of the FDCPA's prohibition on using unfair or unconscionable means to collect or attempt to collect a debt. (R. 33, Am. Compl. ¶ 92.) Therefore, Plaintiffs' FDCPA claim is not barred by *res judicata* because it constitutes a separate transaction from the state court debt collection lawsuits.

**B. Class Action Waiver Provision**

Lastly, Defendants argue that Plaintiffs waived their rights to pursue any claims on a class basis. As the parties both apply Illinois law, this Court will as well. *See, e.g., Wood v. Mid-*

12

*Valley, Inc.*, 942 F.2d 425, 426-27 (7th Cir. 1991) ("Courts do not worry about conflict of laws unless the parties disagree on which state's law applies."). Defendants argue that at the time Plaintiffs opened their AT&T wireless accounts or acquired new phones, it was AT&T's policy and practice to provide all of its new account holders with Welcome Guides. (R. 54, Mot. to Dismiss, Ex. 3, Younger Aff. ¶ 4.)[9] The Welcome Guides contained "Terms and Conditions" of service, including a provision purporting to waive the cell phone user's right to pursue class actions. (*Id.*) Defendants argue that they have the right to enforce the class waiver provisions. (R. 55, Mem. in Supp. of Mot. to Dismiss at 15.) Plaintiffs respond that: (1) the AT&T agreements only govern disputes between Plaintiffs and AT&T, its subsidiary, parent, or affiliate companies; and (2) the arbitration and class action waiver provisions are "unconscionable and contrary to public policy" under Illinois law and thus unenforceable. (R. 65, Pls.' Resp. to Defs.' Mot. to Dismiss at 6.)

The Welcome Guide notifies the AT&T wireless user that: "By using the device or service, accepting a benefit in exchange for committing to new Terms and Conditions or a new contract term, or by paying any amount billed to your account, you consent to the Terms and Conditions set forth in this guide." (R. 54, Defs.' Mot. to Dismiss, Ex. 5, Welcome Guide at 2.) The Terms and Conditions state that it constitutes an agreement between "you," the user or

---

[9] "[D]ocuments attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to his claim." *McCready v. eBay, Inc.*, 453 F.3d 882, 891 (7th Cir. 2006) (internal citations omitted). Because Plaintiffs have alleged class claims, a document or agreement purporting to waive their right to pursue class claims is central to their claims. As Plaintiffs do not dispute having received the Welcome Guide, the Court properly considers the Welcome Guides attached to Defendants' motion to dismiss.

13

account holder, and "us" or "we," defined as AT&T. (*Id.* at 19.) Under the "Resolution of Disputes" section in the 2001, 2002, and 2003 Welcome Guides (the years when Plaintiffs allegedly opened their AT&T wireless accounts), the relevant language regarding waiver of class actions is in essence the same. As to claims for which arbitration does not apply (*i.e.*, the claims that may be brought in court), the Welcome Guide states that "you and we both waive any claims for punitive damages and any right to pursue claims on a class or representative basis." (R. 54, Mot. to Dismiss, Ex. 6, 2001 Welcome Guide at 24-25; *id.*, Ex. 3, 2003 Welcome Guide at 24-25.) The Welcome Guide further provides that "you and we both waive, to the fullest extent allowed by law, any claims to recover punitive or exemplary damages and any right to pursue any claims on a class or consolidated basis or in a representative capacity." (*Id.*) The 2002 Welcome Guide stated that: "You and we both agree that any arbitration will be conducted on an individual basis and not on a consolidated, class-wide, or representative basis." (*Id.*, Ex. 5, 2002 Welcome Guide at 28.)

As explained above, the Terms and Conditions of the Welcome Guide state that it is an agreement between the cellular telephone user and AT&T. The Terms and Conditions cover the terms of the wireless service, rates, usage, billing, payment, limitations, and charges, among other issues. The end of the Terms and Conditions references the possibility of assignment of the contract, stating: "Assignment. We may assign all or part of this Agreement without such assignment being considered a change to the Agreement, and without notice to you." (*See, e.g.*, R. 54, Mot. to Dismiss, Ex. 5 at 28.) Defendants, however, have not provided the Court with the assignment or purchase contract between Palisades and AT&T to clarify whether Palisades purchased all, or only part, of the Terms and Services agreement. As Palisades is a debt

14

collector, but not a wireless services provider, AT&T's sale or assignment to Palisades would appear to be only partial, having to do with payments and charges, but not wireless service and usage.

Although a contract generally binds not only its signatories but also its assignees or purchasers, "it does not follow that every duty imposed by a contract is imposed on all those who are in some degree bound by it." *Asset Allocation and Mgmt. Co. v. W. Employers Ins. Co.*, 892 F.2d 566, 574 (7th Cir. 1989); *see also Int'l Oil, Chem. & Atomic Workers, Local 7-517 v. Uno-Ven Co.*, 170 F.3d 779, 781 (7th Cir. 1999) (noting that a buyer of a refinery would not be bound by the refinery's collective bargaining contract if the seller had not also assigned the refinery's contracts to buyer). In this case, it is not at all clear that the class action waiver provisions in the Welcome Guide were included in AT&T's assignment or sale to Palisades, the buyer of certain AT&T wireless communications debts. Drawing all reasonable inferences from the facts in Plaintiffs' favor, the Court finds that Defendants have not shown that Palisades acquired all rights that AT&T had with respect to the Terms and Services agreement—including the right to enforce the class action waiver provisions—when Palisades purchased Plaintiffs' wireless communications debts. Accordingly, Defendants' Rule 12(b)(6) motion to dismiss is denied.[10]

---

[10] Having denied Defendants' motion to dismiss on these grounds, the Court declines to address Plaintiffs' argument that the class action waiver provisions are unconscionable.

## CONCLUSION

For these reasons, Defendants' motion to dismiss Count I of the Amended Complaint is denied. (R. 54, Mot. to Dismiss.) The parties are directed to reevaluate their respective settlement positions in light of this opinion and to undertake new efforts to settle this case.

ENTERED: *[signature]*

Judge Ruben Castillo
United States District Court

Date: May 9, 2008